# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

Andre' Paul Douga                                    Civil Action 04-1642

versus                                               Judge Tucker L. Melançon

D & Boat Rentals, Inc., et al.                       Magistrate Judge Methvin

## MEMORANDUM RULING

Before the Court is a Motion for Review of Magistrate's Ruling filed by plaintiff Andre' Paul Douga ("Douga") [Rec. Doc. 86] and a Memorandum in Opposition [Rec. Doc. 90] filed by defendant Danos & Curole Marine Contractors, L.L.C, ("Danos & Curole").  Plaintiff seeks review of Magistrate Judge Methvin's Order [Minutes of Court, Rec. Doc. 85] denying his Motion to Compel the discovery of the recorded statement of Andrew Smith [Rec. Doc. 47] and granting Danos & Curole's Motion for Protective Order [Rec. Doc. 64] as to plaintiff's request for the production of this statement.   For the following reasons, plaintiff's motion will be denied.

### A. Factual and Procedural Background

This is an action based on negligence under the Jones Act and unseaworthiness under the general maritime law against D & B Boat Rentals and negligence under the general maritime law against Danos and Curole arising from an alleged accident on March 5, 2004 while Douga was working as a deckhand aboard the M/V RICKY B. At the time of the alleged injury, plaintiff was aboard the vessel,  unloading a grocery

box.  Plaintiff was struck in the right knee by the grocery box when Danos and Curole employee Andrew Smith, who was operating a crane aboard Stone Energy's platform, lifted the load.  Danos and Curole is insured by The Gray Insurance Company.

Smith gave a written witness statement to Stone Energy Corporation on March 5, 2004 and gave the verbal statement at issue on March 29, 2004 to The Gray Insurance Company's claims manager, Danos and Curole's insurer.  Plaintiff filed his complaint on August 6, 2004.  Smith's deposition took place on February 18, 2005. During the deposition, Smith stated he had not given any statement other than the Stone Energy written statement, either oral or written, and that he had not been interviewed by The Gray Insurance Company.

When Danos and Curole first disclosed the existence of the statement in its briefing to Magistrate Judge Methvin in connection with a separate discovery dispute, plaintiff moved to compel the statement's production [plaintiff's Reply Memorandum, Rec. Doc. 73].  After oral argument, Magistrate Judge Methvin entered the following order denying plaintiff's request for the statement:

> ***Request for recorded statement:*** Plaintiff propounded discovery requesting information regarding all statements taken in connection with this accident.  In response, defendant stated that the only statements taken were written statements from plaintiff and Andrew Smith (the crane operator).  In the briefs filed concerning the pending motions, Danos and Curole disclosed that Smith had given a recorded statement.  Defendant claims the statement is work product, that it was taken several weeks after the accident, and that plaintiff has not shown a substantial need for the statement.  The parties also advised that Smith has been deposed, and there is no suggestion that

2

Smith's memory was impaired or that there is any other reason the statement is necessary.   Considering the foregoing, **IT WAS ORDERED** that plaintiff's Motion to Compel be **DENIED** and defendant's motion for protective order be **GRANTED** as to the request for production fo the recorded statement.

[Minutes of Court, Rec. Doc. 85].

The Court heard oral argument on this motion for review, as well as other pending motions, on January 25, 2007.  A ruling on the motion was deferred pending the Court's *in- camera* review of Smith's recorded statement.

Subsequently, Robert S. Reich, counsel for Danos and Curole provided to the Court a copy of Smith's deposition transcript and a copy of the transcript of the statement at issue.  In his correspondence to the Court, Reich confirmed to the Court that the statement and the deposition are substantially similar, noting that opposing counsel asked specific questions in the deposition which were not covered by the statement.

The case was administratively terminated on March 20, 2007 without prejudice to the right to be re-opened after plaintiff has reached maximum medical improvement [Rec. Doc. 140].  The matter will be re-opened solely for the purpose of the disposition of the instant motion.

*Standard of Review*

Rule 72(a) of the Federal Rules of Civil Procedure governs the review of

Magistrate Judge Orders by district court judges.  Rule 72(a) provides in pertinent part that:

> [w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order....The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

 Fed.R.Civ.P. 72(a).

A pretrial discovery motion is non-dispositive and is subject to a "clearly erroneous or contrary to law" standard of review by the district court.   *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir.1995). In applying this "clearly erroneous or contrary to law" standard, a district court shall affirm the decision of the magistrate judge unless, based on all of the evidence, the court is left with a definite and firm conviction that the magistrate judge made a mistake.  *See Moody v. Callon Petroleum Operating Co.*, 37 F. Supp.2d 805, 807 (E.D. La. 1999)(citing *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948)).

*B. Analysis*

*1.  The Work Product Doctrine Generally*

Plaintiff seeks reversal of the magistrate judge's Order, arguing that the magistrate judge erred in finding (1) that defendant satisfied its burden in showing that the recorded statement of Andrew Smith was made in anticipation of litigation,

4

rather than in the ordinary course of business; (2) erred in finding that defendant satisfied its burden of proving that the recorded statement contained mental impressions of defendant or its agents; and (3) that the magistrate judge erred in limiting the scope of the protective order to protect only the mental impressions, evaluations and conclusions of defendant and not the purely factual elements [plaintiff's Specification of Errors, Rec. Doc. 86]. Defendant argues that courts have repeatedly held that statements of eyewitnesses to an accident taken by the defendant's adjuster following the accident are clearly made in anticipation of litigation and that plaintiff has not satisfied his burden that he has substantial need for Smith's recorded statement. Defendant suggests that plaintiff blurs the language of Rule 26(b)(3) when he alleges he is entitled to production of its work product because only "mental impressions, evaluations, and conclusions" are protected by the work product doctrine and plaintiff has failed to satisfy even his threshold burden for the production of "ordinary" work product [defendant's Opposition, Rec. Doc. 90, p. 4].

"The work product doctrine, first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), was codified in 1970 as Federal Rule of Civil Procedure 26(b)(3)." *Chiasson v. Zapata Gulf Marine Corp.* 988 F.2d 513, 514 (5th Cir. 1993). Generally, a party cannot discover documents or tangible things

otherwise discoverable and "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Federal Rules of Civil Procedure Rule 26(b)(3). The work product doctrine protects two categories of materials: ordinary work-product and opinion work product.  *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.,* No. 6:06 CV 222, 2007 WL 1217897, *2 (E.D. Tex. Apr. 24,  2007).  As codified in Rule 26(b)(3), work product which contains the mental impressions, conclusions, opinion, or legal theories of an attorney has become known as opinion work product which is afforded a high degree of protection.  *See*  8 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 2026 (2d ed. 2007).  However, a court can order disclosure of "ordinary work product" if "(1) [t]he party has a substantial need for the material in order to prepare for trial; and (2) [t]he party is unable without undue hardship to obtain the substantial equivalent of the material by other means."  See 8 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 2025 (2d ed. 2007); Fed.R.Civ.P.  26(b)(3).

The United States Court of Appeals for the Fifth Circuit has indicated the standard for determining whether a document has been prepared in anticipation of litigation:

> [i]t is admittedly difficult to reduce to a neat general formula the
> relationship between preparation of a document and possible litigation
> necessary to trigger the protection of the work product doctrine. We
> conclude that litigation need not necessarily be imminent, as some
> courts have suggested, as long as the primary motivating purpose
> behind the creation of the document was to aid in possible future
> litigation.

*United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981) (citations omitted);

*accord In re Kaiser Alum. & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000).

Excluded from work product materials are materials assembled in the ordinary

course of business, or pursuant to public requirements unrelated to litigation. *U.S.*

*v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).   "The burden of establishing that

a document is work product is on the party who asserts the claim, but the burden of

showing that the materials that constitute work product should nonetheless be

disclosed is on the party who seeks their production."  *Hodges, Grant & Kaufmann*

*v. U.S. Government, Dept. of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985).

2.  *Applicability of the Work Product Privilege*

The crux of the matter before the Court is whether Smith's statement taken by

The Gray Insurance claim's manager was taken during the routine adjustment of a

potential insurance claim or, instead, was taken primarily for the purpose of future

litigation and, thus protected by the attorney work product doctrine.  "Numerous

courts have noted the difficulty of determining the scope of work product privilege

as it applies to insurance claims files or records from an insurer's investigation of an insured's claim" *St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 630 (N.D. Iowa 2000).  "Because an insurer's business is to investigate claims that may or may not result in litigation, application of the work product privilege to insurance claims investigations has been frequently litigated." *Goodyear Tire and Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 535 (S.D. Ind. 1999).  "[C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies. Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection." *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000).

In order to satisfy its burden of proof that the statement at issue was prepared in anticipation of litigation, defendant argues that, while plaintiff attempts to characterize the statement as a document created in the ordinary course of business, courts have repeatedly held that statements of eyewitnesses to an accident taken by a defendant's insurance adjuster following the accident are clearly "material prepared in anticipation of litigation," relying on *Hamilton v. Canal Barge Co. Inc.,* 395 F. Supp. 975, 976 (E.D. La. 1974) (J. Rubin)   [defendant's Memorandum in

Opposition, Rec. Doc. 90, p. 3]. In *Hamilton*, a case in which the injured party was no longer alive to give his own account of the accident, the court held that eye witness statements taken on the day of the accident by an insurance adjuster were clearly within Rule 26(b)(3)'s category prepared in anticipation of litigation. *Hamilton*, 395 F. Supp. at 976. Defendant argues that allegations of personal injury are involved in this case, and here, as in *Hamilton* the "facts bristle with the potential for litigation." [Id.]. Defendant states that, in order to prepare for impending litigation, Gray's claims manager obtained a recorded statement of Andrew Smith, the crane operator [defendant's Memorandum in Opposition, Rec. Doc. 90] while plaintiff argues that Danos &Curole has not submitted evidence to support a finding that the primary motivating purpose behind the creation of the document was to aid in possible future litigation.

To the extent that defendant relies on *Hamilton* for the proposition that witness statements made by a defendant's insurance adjuster taken following an accident are afforded automatic protection under the work-product doctrine, defendant's argument fails to recognize that there are other distinct approaches to this legal problem. One district court noted three approaches: (1) where protection is denied to insurance reports prepared after an accident that may generate a potential claim based on the reasoning that insurance business should not be insulated from

discovery; (2) where protection is liberally granted to such items if they are produced in the wake of an accident likely to be litigated; and (3) where protection is granted or denied, after considering the unique factual context of the given problem. *St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.,* 197 F.R.D. 620 (N.D. Iowa 2000), (citing *Mission National Insurance Co. v. Lilly*, 112 F.R.D. 160 (D. Minn.1986)). Moreover, the Court notes that in *Holton v. S & W Marine, Inc.*, a 2000 decision from the Eastern District of Louisiana, the same district in which *Hamilton* was decided, Judge Eldon E. Fallon stated that *Hamilton* did not establish a bright-line rule that every statement taken by a defendant's insurance adjuster is prepared in anticipation of litigation and that material assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not privileged work product, relying on Fed.R.Civ.P. 26(b)(3) Advisory Committee Notes (1970) and *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir.1982). *Holton v. S & W Marine, Inc.*, No. CIV.A.00-1427, 2000 WL 1693667 at *2 (E.D. La. Nov. 9, 2000) (J. Fallon). The *Holton* court noted that *Hamilton* involved a serious accident which caused the plaintiff's fatal injuries and that the defendants' insurer was on the scene hours after the accident to begin collecting information for the lawsuit that would inevitably be filed. *Id.* The *Holton* court indicated that, based on those facts, the *Hamilton* court found that the insurer

10

Was not acting in the ordinary course of adjusting a potential claim but was taking statements clearly in anticipation of litigation. *Id.* at 3. The *Holton* court continued that there is a vast difference between the death of an employee, an extraordinary, tragic event, and the investigation of a non-life threatening injury on a barge which is a fact of life for vessel owners and their crew members. *Id.* The *Holton* court found that the statement at issue was collected in the normal course of business, noting that plaintiff had no prior history of litigation, had neither obtained counsel nor filed suit when the statement was taken and that the plaintiff did not seek medical treatment until six days after the incident and the statement was not taken until thirty days thereafter. *Id.*

The Fifth Circuit Court of Appeals does not appear to have addressed the precise issues presented here; however, district courts , including the *Holton* court, within the Circuit have done so. Noting a decision from the Seventh Circuit Court of Appeals, *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir.1996), which looked to a document's factual context when determining whether it could fairly be said to have been prepared in prospect of litigation, an Eastern District of Louisiana court indicated "[f]actors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine

practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Gator Marshbuggy Excavator L.L.C. v. M/V Rambler*, 2004 WL 1822843, *3 (E.D. La. Aug. 12, 2004) (Mag.  J. Wilkinson).  The court continued that, "[i]f the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." *Id.; See also Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. Civ.A.99-3759, 2000 WL 1145825, *2 (E.D. La. Aug. 11, 2000); *See also* 8 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 2024 (2d ed. 2007). "The involvement of an attorney is not dispositive of the 'in anticipation of litigation' issue. Nevertheless, involvement of an attorney is a highly relevant factor ... making materials more likely to have been prepared in anticipation of litigation." *Carroll v. Praxair, Inc.*,  2006 WL 1793656, *2 (W.D. La. Jun. 28, 2006) (Judge Wilson).

In the instant case, defendant has not submitted any affidavits or other evidence to support its arguments.  Particularly defendant has not submitted evidence as to attorney involvement in the case.[1]  However, looking to the document's factual

---

[1] Robert S. Reich, counsel for Danos and Curole stated during oral argument at the hearing on the motion that Danos & Curole had been contacted by D&B Boat Rentals to recover maintenance and cure although he did not know when.   Reich also stated that Lawrence N.

context, the Court finds that other factors indicate that the primary motivating purpose behind the taking of Smith's statement was to aid in future litigation. First, while the *Holton* court distinguished between an action involving the death of an employee and a non-life threatening injury, the Court finds that this consideration weighs in favor of the non-mover. Although, the injury is not life threatening, plaintiff alleges that he has suffered permanent injures, including permanent and disabling injuries to his right knee [Complaint at para. 9].[2] Second, although the statement was not taken the day of the accident, the Court recognizes that the statement was taken within the month, or twenty-five days following the accident. Third, as to the relationship of the parties, the Court notes that the plaintiff seaman was not employed not by mover Danos and Curole at the time of the accident but by D & B Boat Rentals. Finally, the statement at issue is of the crane operator who was operating the crane at the time the accident when the alleged injuries occurred. With this scenario in mind, the Court finds that the primary purpose behind the statement's

---

Curtis, counsel for plaintiff, contacted Gray Ins. Co. shortly after the accident, although he did not know whether the contact was made before or after the statement was taken. Plaintiff counsel denied that any such contact was made prior to the filing of the lawsuit.

[2]In the parties' pre-trial order, plaintiff claims that his injuries are permanent and include a serious injury to his right knee; namely, a medial femoral condoyle defect of the right knee with a partial ACL tear, an osteochondral injury to the distal femoral condoyle, entrapment of the saphenous nerve on the right and patello femoral pain syndrome, right knee [Pre-trial Order, Rec. Doc. 114]. The pre-trial order also indicates that plaintiff has undergone at least two surgeries.

creation was to aid in possible future litigation and in response to a substantial likelihood that litigation would ensue.

Further, after an *in-camera* review of the transcript of Andrew Smith's March 29, 2004 recorded statement to the claims representative for The Gray Insurance Company and the transcript of Smith's February 18, 2005 deposition, the Court concludes that Smith's recorded statement is the substantial equivalent of his deposition testimony and does not contain additional information.   Accordingly, upon reviewing the Magistrate Judge's order, Douga's objection and Danos and Curole's response thereto, the Court concludes that the Magistrate Judge applied the appropriate legal standards to the issues raised and did not make any clear error in her rulings.